Good morning, I'm John Rhodes from the Zula Office of the Federal Defenders of Montana. I represent Dan Wallen, who is with me at council table this morning. I'll try to preserve two minutes. Paraphrasing the late, great Justice Scalia, when adjudicating the right to a jury trial, the judiciary is operating on the spinal column of American democracy. I filed a 28-J letter yesterday from a Supreme Court decision, opinion, Rodriguez, that issued on Monday. It reinforced how important the council problem I have, even with your supplemental 28-J letter, is that we still have the Clavette case in front of us. I think you need to address the Clavette case, do you not? You honor in Clavette, which was a Montana case, I'm very familiar with that. I know the defense counsel, they were out of our office at the end of last century. That case did not involve an erroneous element here. It clearly did. The judge relied on objective reasonableness to determine. But that's a separate issue. You might have a reason why we should remand or do this again, but that doesn't get to whether it's a jury trial or a bench trial. The real question is whether this is a petty offense within the meaning of our precedence. Is it not? Your Honor, it is not entitled to a jury trial. The argument that we're making that's distinct from Clavette was not raised in Clavette. In fact, Clavette was not remanded. Here, if the case is remanded, the Sixth Amendment guarantees an impartial jury. If it's a bench trial, you have to have an impartial judge. The Fifth Amendment guarantees due process, fundamental fairness, which we know requires the appearance of fairness. If the case is remanded to the same judge or another judge, they are going to know the prior verdict. In fact, the judge will know the entire verdict. If your argument is the prior verdict is tainted by a mistaken element, I don't know if we'll agree with you about that, but say we agree with you about that, what prevents this judge from applying a different test at that point? Because if you were selecting, and I don't know how much trial experience you had, a lot, all right, Judge Fischer, if you were selecting a prospective juror in a remand situation and somebody in four-D raised their hand and said, oh, I heard about that prior verdict, the trial judge judges are not jurors. Judges often have cases reversed by us and remanded after they have committed error, and we have strict standards on when we reassign to another judge. Now, in this case, I understand there was a magistrate judge, so why can't it go back and Judge Christensen can try? Your Honor, first of all, Judge Christensen affirmed Judge Leitzel. I think that deems impartial. I don't think Judge Christensen as a judge can divorce himself from a prior approval of the EMJ's rulings and render a fair verdict. I don't think he did in this case, Your Honor. I think he erred as a matter of law. Because judges, even federal judges, are human beings. It requires mental gymnastics to put aside knowledge of a prior verdict and try to comprise what we're capable of. We do this all the time, don't we? I mean, we often find some legal error and remand, and the standard is extremely high for a judge to be replaced. The idea that they ruled a different way originally is definitely not the standard. I'm sorry to interrupt you, Judge. Can you respond to that? Those cases are dealing with legal issues. Here we're dealing with the right to trial. The standard is really high. It's an impartial jury guaranteeing due process and the appearance of justice. It's the highest standard there is in this country, and there's no way. Well, that's since he doesn't have a right to a jury trial in this case. Well, that was reviewing the original prosecution and trial. Here we're seeing on remand, not as a matter of this isn't a petty offense, although I think it's not because of the amount of fines involved, and that was an issue not considered in the statutory scheme in Clifton. But we're saying on remand, there's no way a judge who knows the verdict, who knows the procedural history, can satisfy the appearance of justice and be impartial. Do you have any authority, any case authority, where this has ever been invoked and applied in a judicial case? For some reason, Your Honor, it's never been argued, but there's no authority to the contrary that says, oh, if we remand a trial-guilty verdict, we can send it back to the same judge or a different judge without violating the Fifth and Sixth Amendments. So in terms of authority, I realize we're asking something that a court has never addressed. And I know judges are highly trained, particularly federal judges. To me, it's the royalty of the American bar are federal judges, but they're still human beings, and it's mental gymnastics that just aren't possible. Counsel, may I suggest that you move on from the jury issue because I'm interested in your views on the good-faith belief standard and your argument on that? Thank you, Your Honor. In terms of the good-faith belief, the law is clear. The leading Ninth Circuit cases are Rossi, the case about digital copyright protection, and then Powell, a criminal case, that good-faith belief has to be subjectively interpreted and applied. And here the judge was very clear. He determined the self-defense element on objective reasonableness. There's a world of difference between subjective and objective, and the government didn't even respond to the Rossi or Powell cases or any of the other cases I brought up. Should I agree with you that there was a mistake here because it should have just been a subjective test? Why should we read what the magistrate judge said as not even believing that he had a subjective good-faith belief? Because it seems that the magistrate judge didn't believe his testimony and didn't think he even had a good-faith belief, and so I'm not sure we even need to worry about this reasonableness issue. First, it's a high burden to overcome harmlessness beyond a reasonable doubt. Second, the government sort of pieced together what the magistrate opined to say that, oh, the judge may have convicted me under a subjective self-defense standard. The Sullivan case from the Supreme Court goes right to that issue. And I'll quote, The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict surely would have been rendered. Usually, when there's a jury trial, we don't have an explanation of every step of the reasoning, but here we have the magistrate judge saying that the discrepancies in the testimony compel the court to conclude that Wallen's trial testimony as it pertains to his claim that he acted in defense of himself or others is simply not credible. Then I'm going to go right back to the jury trial, right? Then you're saying there's a different standard for a bench trial than a jury trial? Well, I don't think that's true. If you have a verdict form that lays out every step, then we know what the jury did in some trials. We have that here. This is almost like a special verdict form. I think in civil trials, you have very complex verdict forms. Criminal trials, I've seen a lot of them, it's not guilty, guilty. And so if there's a different standard in the criminal context, that violates the Sixth Amendment right to a jury because you're saying if a judge convicts you, we'll review in one way, but if a jury convicts you, that's different. And that goes not at all to the Colpatt and Lewis issues. That goes to the Sixth Amendment, and the government's agreed, and it's briefing, it was written by the government. But if you don't have a right to a jury trial, then how do you invoke the right to a jury trial? You have a right to a trial, then why do we even have a trial? Why even have a bill of rights? Just let the government decide somebody's guilty. Just last year, when Glenda Rosales, the club, wrote that we review a bench verdict the same way we review a jury verdict. And the point you're making, Your Honor, respectfully, that's changing the standard of theory. It undermines the right to trial, the right to a jury trial. Counsel, do you want to say something about the inconsistent testimony by your client with respect to where the grizzly bears were, whether they were eating chickens in the coop, or they were 40 yards away, or 15 yards away when he shot them? There were a lot of inconsistencies. What are we supposed to do with it? Your Honor, what happened was the initial interview, which was in Mr. Wallen's kitchen with his wife by the federal agent, the questions were very broad, in fact. That agent never asked where were people specifically standing. He didn't take measurements. He claimed a trial. He paced it out. You would think a law enforcement officer, if they paced out measurements, would put it in their report. Nothing was in there. And Mr. Wallen's stroke, what he said, was consistent, but he just provided more details. And if you listen to the recording, which was admitted into evidence, you can do that. You'll see that the questions were very broad, but most importantly at the end of it, Mr. Wallen wrote an affidavit that said he was fearful for himself and his family. The officer never asked him those questions, but that's what he said. Plus, the state Fish, Wildlife, and Parks law enforcement officer there that night talked about the fact that Mr. Wallen was right. He was shaking. He was fearful. His neighbor said the same thing. So there's a lot of conflicting evidence that contradicts what the agent is saying, but, again, the agent's questions were so broad and vague, they didn't nail down the type of details that should have been nailed down. And I don't know why he did that, but, again, he never asked were you fearful, were you afraid, were you acting in self-defense. Mr. Wallen, on his own, produced an affidavit that stated those very things. So the idea that there's inconsistencies, we simply disagree with. I see I'm over my time. I'd like to ask one other question about whether the reasonableness thing actually is an error. So say you have someone who believes that zoos are not built adequately and thinks that the existence of a zoo in their town is threatening them and their family because it shoots all the animals. That person can't be guilty in your view. That wouldn't be under the Endangered Species Act, would it? Well, most of the animals in the zoo are endangered. Well, then, if they're not claiming self-defense, let's see. Well, no, they would be because they think the zoo is not built properly and they're neighbors and they're worried for their family. Then the fact-finder would have to determine whether or not the person subjectively acted in self-defense. Say if the person actually had this belief but it was completely unsound and no one has ever had a problem with the cages in these types of zoo cages, then they would be innocent. So you've read or you've got to read the Powell case. That followed Cheaps, Cheaps' Supreme Court case, basically dealing with people who don't believe in the tax system, who were raising sort of similar defenses. And in Cheaps and Powell, the Supreme Court in Cheaps, this court in Powell, said that can be a defense that the fact-finder has to adjudicate. So that's the legal standard. Adjudicate, though, because it is, I think, just briefly tracing the question I had. If we go back on this totally irrational subject, was there no constraint on the reasonableness of his good-faith belief? Well, that's where the jury would come in and hear the facts. That's what the judge assumed for now, whether it's a jury or a judge. I'm asking you, what are the criteria that the judge uses or the jury to determine whether they believe that it was a subjective belief, other than the fact that the person may be lying? What if the belief is totally irrational? First, they look at the surrounding facts, which here, that's why the fact that these bears came to these people's house five times in 24 hours, they called to report them. At night, the first thing they came to the fact was the surrounding facts. I want to know, what is the legal standard? Does it have to be a reasonable good-faith belief? No, Your Honor, that was the air below where the judge qualified that it was objectively reasonable. The question is whether or not the evaluation of the testimony of the individual says that this person is delusional. Does that suffice, even if it's a delusional, like the zoo example? The person is just paranoid about, I don't mean clinically, but just as frightened by the zoo environment when they get in there. To answer that question properly, Your Honor, I'd have to research, and I think I would go to the tax cases. I've represented people that I think were generically labeled tax protesters. I'd have to go back and look at those cases. I think we're not dealing with illusions or delusions here. We're dealing with a lot of facts, and I'm trying to get a general understanding of what the constraint is if we import tax as sort of a sui generis area of the law. I understand that, Your Honor, this gets into major philosophical questions, subjective versus objective, but the law is clear. It's good-faith belief being subjective. And just to touch upon the Kaiser case, I'm very familiar with that case. That's a Montero Reservation case. I've tried quite a few reservation self-defense cases, and there's no good-faith belief qualifier in that instance. So it's apples and oranges. Do I have a little bit of time for rebuttal, Your Honor? We'll give you a minute. We'll give you two minutes for rebuttal because we've taken everyone over and we've made your decision. Thank you. Good morning. May it please the Court, my name is Megan Dishon, and I represent the United States. We would request that the Court affirm the magistrate, judge, and the chief judge restrictions of rulings convicting Mr. Wallen. I think there was obviously no right to a jury trial that was well settled under Clement, and I'd like to speak to that briefly, but I'd like to address the subjective objective issue in more detail. I think Judge Fischer hit it right on the head, but we assume if there's a need for a remand, and we don't believe there is, that the charge will be impartial. And, in fact, there is a case that addresses this that was cited by the appellant, Wilson, which is 250 F. Second 312, who said it's an older case, but it's a bench trial. The Court found there was an erroneous element there, remanded it, reconsider in light of our correct standard, look at your findings, see if there need to be additional findings, and apply the correct standard. That's absolutely the appropriate remedy if there's a necessity for a remand, which we don't believe there is. If there were a remand, would he be entitled to ask that the district court be the bench official on the re-trial, as opposed to the magistrate judge? I don't think he's entitled to it. I don't think it would be unreasonable to reassign him. It's a very high bar to reassign a case like that. I understand, but you said he wouldn't be entitled to it. Wouldn't he have to stipulate to a magistrate judge? I don't think he would have to stipulate to a magistrate judge. I think any of the judges in the District of Montana could hear this case on remand. I think it could be a district court magistrate. In a criminal case, is the rule in Montana that you don't necessarily have a bench trial? You have to, in order to have a magistrate judge preside, you have to stipulate to it. No, the magistrate presided here because it was a class B misdemeanor case of any offense. So I think Wilson gives the answer. Counsel, do I, reading between the lines, get the impression that you would not object to reassignment to a different judge if he were to remand? I haven't considered that, so I wouldn't object, Your Honor. I think that would be reasonable, but I think additional findings by the same magistrate would also be a reasonable, appropriate, non-erogous remedy. Regardless, I do not... The reason I expressed that question is that it's pretty clear from the record that this magistrate simply didn't believe Mr. Wallen, period. That's correct. And I think that goes into what Your Honor was addressing earlier, that under any standard, the judge found that Mr. Wallen simply was incredible, and regardless of what Mr. Groot suggested in his brief, the fact-finder who was a judge here has not only the right but the obligation to make credibility findings about every witness, and he in great detail, it's in pages approximately 37 through 44 in excerpts of record, makes very detailed findings about all the inconsistencies. But, Kelly... Notwithstanding the fact that a more rigid standard was really being implied. I think he did, obviously, imply an objective standard, but as I think Chief Judge Christensen correctly pointed out, he says the findings that led the court to reject Mr. Wallen's defense of inconsistency and lack of credibility are just irrelevant to whether Wallen's conduct was objectively reasonable. I think under any standard here, the Doe case, which the appellant relies on, says, look, there wouldn't need to be any additional findings. That's exactly the case here, under a purely subjective standard, which we don't think applies. You wouldn't expect to see any additional findings in order to have found or have reached a guilty verdict. No, I want to address the subjective objective. The appellant suggests that it is black and white across the board, that good faith cannot include a component of objectivity, and that's simply incorrect. Rossi, the case he relies on, expresses this in the context of Section 512. That's copyright law. The other cases we're talking about are tax cases where there's a willfulness and a specific attuned standard. But this court, in fact, fairly recently, in a criminal statute, has applied a good faith standard in a way that includes both a subjective and objective component. And I didn't cite this in my brief, and frankly, I was a little remiss. In Sam's v. Yahoo, Inc., 713 after 1175, it's addressing the Stored Communications Act and says to a criminal or a civil action, good faith reliance on a subpoena is a complete defense. And the court holds, this court holds, that we agree that the test of good faith reliance should contain both an objective and a subjective element. That's exactly the case here. When did you find this case? I just found it as I was preparing for argument. When was that? In the last week or two. You ever heard of a 28-J letter? I have. I tend to think of a 28-J letter as necessary for new cases such as the Peter Rodriguez case. I'd be happy to provide a proposed briefing submission if that would be helpful. In my education, we prepare these cases in advance. We've worked hard in the last week to make sure they're fresh in our mind. So when you wait until argument to spray a case on the table and you say that this is positive, that's not very helpful to us as judges, is it? It's not, Your Honor. I completely agree. Thank you for your apology. Yeah, and I do apologize for that. And as I said, if it would be helpful, we would be happy to provide a proposal briefing submission. How clear is it relevant to anything that's new, as there could be a courtesy to the court? Yes, Your Honor. Under the circumstances, before you leave the courtroom today, give the deputy clerk a citation and serve it on your opposing counsel with the copies reached to the three of us, please. Yes, Your Honor. I would say that I don't necessarily think that case is dispositive. What I think it suggests is that we have to look at the context of the statute to decide how we interpret the good faith element. And here, what I think is critical is that we're talking about self-defense. And that's why I think the Kaiser case is relevant and why I think Shuler, the district court case, that was a civil administrative case, hits it right on the head when it talks about immediacy and imminence. And that's what Kaiser talks about. That's what the standard jury instruction in the Ninth Circuit talks about. And I think that goes to Your Honor's points earlier. We have to have some objective analysis of the facts surrounding the claim self-defense to see if there was some sense of imminence or immediacy. That is, also in the common law, consistently in self-defense, you always see an element of what was immediate or imminent. The common law crimes in the statute in Kaiser don't have the words good faith beliefs. So are you saying we just read those words out of the statute? No, Your Honor. I think there obviously is a good faith in it. It is a more, I think, flexible and circumstance-dependent standard that's obviously always going to depend on the particular facts of the case. But I do think there needs to be some assessment of the imminence and the immediacy. Otherwise, the exception swallows the whole here. It becomes a tautological argument that these would serve as all under the statute. All anyone has to say is, well, I shot the bear. I must have had a good faith belief. Well, you should care for it. There's no guilt. The United States has to be able to point to other facts that could prove that this was not what actually happened. And again, we'll go back to the harmlessness argument. That's exactly what happened here. The court looked at the other facts. Facts that were very similar to Colbeck and said, regardless of what the appellant argues now, the court made some extensive findings that the stories were inconsistent. Can you respond a little bit more about that? So your opposing counsel argued that the way the questions were worded, which agreed that this was not really an inconsistent testimony. I think what he's referring to there was the questions by Agent Lakes. And I think I would disagree with this characterization. I think Agent Lakes gave him opportunity to tell a story. He simply didn't say until trial, I was scared for myself. I thought the bear was attacking me. But regardless of what I think or what Mr. Rhodes thinks, that was the fact finder's province to decide. Is that the inconsistency that you think the judge relied on for the credibility issue? Or is it more about how many bears were there and when they were there and what they were doing and where the family was? I think all of it. I think the inconsistency in his statements, the locations of the bears, the inconsistency with his daughter's testimony, the fact that one of the bears, just like in Colbeck, had rear entry wounds instead of the front entry wounds you would expect to see if a bear was charging you. I think the totality of all of those added up to the judge that Mr. Wallen's story simply didn't add up. I see I've run out of time. But for those reasons, we think it's critical to accentuate the purposes of the ESA. The repeated objective component particularly is to the immediacy or eminence of the threat. But regardless, under any standard, you wouldn't see any different findings under a purely subjective standard here. Mr. Wallen was not credible. That finding is entitled to deference and is subject to clear error or repeal. For that reason, we would ask that the court affirm. Thank you. I'll try to talk quick. In terms of that finding being subject to deference, the cases cited by the United States to support that point are trial findings. They were, I believe, motions to suppress. I understand it because I've appealed lots of motions to suppress. That is the law. And again, if the law is somehow there's a different standard for reviewing a pench verdict versus a trial hearing, that violates the right to jury trial. They're quite a resolvist case. Very clear. You apply the same standards of review, whether it's a bench or jury trial. In terms of this sense of immediate or imminent harm, I would really encourage you to look closely at Exhibits 502. They show the lay of the land. The first three times the bearers came to their house, their yard, they came down a driveway that came out of the palace. And then, if you look at Exhibit 503, it's a video taken by their neighbor, Tom Clark. You can see the bearers, after they've come down this driveway, are moving through this field in the video. And if you watch it, you see the bearers. And then the bearers are gone. And they're out of the video's sight. And at that point, Mr. Wallin's out picking up dead chickens. And the bearers, what they did was they circled all the way across the highway, Highway 83. And I know this is Montana, but it's a major highway, state highway in Montana. They circled either across the highway or came down and walked on the highway. And then they came back across the highway, up the Wallin's driveway that comes off of the highway, their main access to their property, and around a garage. And if you look at Exhibit 502 and watch the video in Exhibit 503, you can see the immediacy, the eminency of the danger here. The idea that Mr. Wallin didn't bring up that he was afraid and that the findings were clearly erroneous, I'm not sure where you're going with this. I'm not saying, no, I'm just saying that if you, the government's making a big deal about immediacy. And if you watch the video, you will see and look at the Google Maps, which are Exhibit 502, there's a series of them that different witnesses marked on. You'll see that these bears cross over a highway and cross back over that highway or walk down the highway. I mean, does that mean he had time to just go inside? I'm not sure where you're going with this. He was picking up dead chickens, my point is. Okay, but it's not picking up the dead chickens and going inside. I mean, I'm not sure what this highway thing was, I guess. Because the first three times the bears came to the house, they came down this driveway where you could, they went into the mountains, the driveway going behind their house. You could see them coming. This time, who expects three grizzly bears to cross over or walk down a highway, come in the driveway, and around a blind corner? That goes to the immediacy of the situation that Mr. Wallen was facing. The idea that he never brought up that he was afraid, that's simply wrong. He wrote an affidavit and gave it to Agent Lathes and said, quote, I was fearful for myself and my family. So this wasn't some trial defense that I helped him concoct or we concocted to try to show self-defense. He told the agent, I wrote that for an agent who never otherwise asked him about how he felt, was he afraid. He never asked those questions. I don't know why, but he did. On the immediacy, I don't understand. You're saying there was an initial sighting and then the bears disappeared. Can I explain? And then the neighbor takes them out on the patio, but was Mr. Wallen aware of all of that or not? There were – I'll give you the full sequence. The morning in question, the Wallens woke up and there were dead chickens. And the chicken coop, something had busted through it. I got that. So then that night or that late afternoon, the Wallen boys, two boys, were playing wiffle ball with the boyfriend, a third boy. I just need to tell you. Okay. So the bears came down the driveway that heads into the mountains. The first time, Mr. Wallen, after he got in his pickup truck and herded or corralled them back up the driveway into the mountains, the bears came back down that same driveway that led to the mountains a second time. Mr. Wallen, a second time, got in his pickup and herded them back up the mountains. Then the bears were moving in this field. This is where the video comes in. And Mr. Wallen observes them. And then the bears disappeared. And I think at that point, I don't know if there was testimony, but my read on it was, emergency is over. I'm now going to pick up these dead chickens. And the chickens were out of the coop. They had flown the coop. Right. And they were around him sort of in a safety, I assume it's like a pet, going to their master as Mr. Wallen is picking up the chickens. At that point, he had got his .22 rifle, which, by the way, he had already got. And the bears, that's when, this is circumstantial reasoning. They must have gone. However they got there, he didn't know. He didn't know. He didn't know that the bears had gone across the highway or walked down and came around this garage, a blind corner. So you're saying, I'm not sure what the video told. However, they got back. Right. They came around the blind corner. Right. And they either got back by walking down the highway or across the highway. They got there. And in terms of somehow incorporating the human self-defense standard, we're dealing with wild animals. Maybe that's why Congress couldn't give faith to leave him. I don't know. In terms of Shuler, that case, the rancher who shot the bear ultimately prevailed on a simple standard of preponderance of the evidence. In fact, there is less self-defense than there are here. So Shuler squarely supports Mr. Wallen. I will just conclude with where I started. Mr. Wallen, sit right here. He's guaranteed an impartial fact finder. He's guaranteed justice, and justice requires the appearance of justice. And I realize judges have to do these sort of compartmentalizations all the time, but they're not doing it for trial. For whatever reason, this has never been raised before. But that issue wasn't raised in that case. And, by the way, the idea that this could be remanded just for some additional fact finding, that would be another violation of the right to trial, the right to jury trial, because there was never a finding of guilt based on the proper elements. You can't send it back to have some additional fact finding. You send it back and get a new trial. And he's guaranteed an impartial jury or an impartial fact finder. And I know judges have to. We've got the evidence. We have your argument. This one is us. All right. Thank you very much. I appreciate it. The right to jury trial, we do understand that. Thank you. Your honor. Thank you both sides for your arguments. The case is submitted, and we are adjourned for today.
judges: O'scannlain, Fisher, Friedland